Morning, Your Honors. The police, the court. The first matter that I would note for the court is that the appellees in their brief have conceded two very important issues. First, they concede the issue of the existence of a no-parole policy. This is a proper concession on their part. For purposes of argument. Because of the 12b-6. They concede for purposes of argument. Well, they conceded because it is a 12b-6 motion, and that has to be presumed to be true. Doesn't that amount to what I just said? Yes, sir. I just want to make sure you're not talking to the press and saying that they made a concession that they haven't made factually. No, I understand. Because of the concession of that, what you have is you have this case coming on the context of a clear unconstitutional application of the law. And the real issue that then presents itself is what are the proper remedies for the people in the plaintiff's position in this case to pursue to deal with that unconstitutional policy? Now, the first possibility is habeas litigation. Habeas litigation, as you can see from the multitude of cases that have gone through the California courts, is really getting nowhere in the process. I don't understand why not. Ninth Circuit grants a fair number of petitions. That's correct. The Ninth Circuit is the one that is forced to take care of business because the California courts aren't doing it. You have the Biggs decision issued recently. You've got the Poole decision issued recently. McQuillian, too. But it's where you are. Why, other than your feeling that the State courts don't grant writs enough, isn't habeas, which I don't think is a valid reason, isn't habeas the proper remedy? The reason that habeas isn't the proper remedy is, one, it's been ineffective. But secondly, it doesn't take care of the forward-looking relief that's being sought by the plaintiffs in this case. When you really look at the complaint and you boil it down to its essence, what it's really saying is the governors, the Board of Prison Terms, each of these state actors is failing to properly apply the law. They're violating due process and they're violating equal protection by not properly implementing the mandate in Penal Code 3041 that parole shall normally be granted. Because they're not properly implementing the law, what we're looking for here is not to invalidate some past parole hearing. So a decision in this case, I think the way to look at it in terms of the HEC bar, which was the primary issue that the district court decided this case on, when you look at it in terms of the HEC bar, under the decisions of this court, it is clear in light of and also in line with the decisions of the United States Supreme Court, it's clear that what you look to does the ruling in this case, if the plaintiffs get the relief that's being sought in this case, which is in essence an injunction declaring the state actors to not violate due process and equal protection by their application of Penal Code Section 31. If that relief is given, does that necessarily invalidate a particular parole hearing? And the answer to that is no, it does not. It would not result in the release of any of these inmates. These inmates, if they were to bring an action subsequent to the judgment in this case, would not be able to assert this case as collateral estoppel on the issue of whether they're entitled to immediate release. It would not give them that right, because there would not be a determination in this action that their parole hearing was invalidated. When we talk about using parole hearings in this case, what we're talking about is using them as evidence of the existence of the no parole policy, not as something that we're seeking to challenge to overturn. We're not seeking to say that, you know, Mr. McQuillian's fourth subsequent parole hearing was invalid, and therefore he's entitled to release. The district court ruled on an exhaustion basis rather than a heck basis. Well, they actually used both. They used heck as to McQuillian specifically, but we know that that's been taken care of as to McQuillian, because he's been ordered by this court to release pursuant to a habeas writ. They also then went through the analysis of heck as to the other 16 plaintiffs, and although stating essentially that it didn't bar them from proceeding, it then went down into a specific discussion of the types of relief that were given and said, well, those types of relief are barred in any event. Now, they also did go into the exhaustion. I didn't think he said it, that the other plaintiffs were heck barred. He actually said the other plaintiffs are not heck barred, but then went into a discussion of the specific types of relief and, in essence, made the determination that those were not proper matters to be brought and should essentially be brought by habeas. So the net result is really the same. But you're right, there is also a follow-up determination that the district court made in which it said that there was an exhaustion requirement. On the exhaustion requirement, the issue is, what is the administrative remedy that these inmates could seek to obtain an order, forward-looking in nature, that gets the governor and the acting members of the Board of Prison Terms to follow the law? There is no such remedy. And nowhere has the Attorney General's office pointed to one. There's their 1040 appeals, the BPT 1040 appeals under 2050 of Title 15 of the Code of Regulations, those appeals are specific to past hearings. So if an inmate has a past hearing and wants to challenge the result of that past hearing, they can bring their BPT 1040 appeal. They don't have any means of challenging forward hearings of the Board of Prison Terms. Why, I keep getting it and then not getting it. Why can't an inmate apply for parole, lose on the assumption that the executive branch has this no parole policy, appeal within the system, lose again, assuming that there's this policy that will cause him to lose, a no parole policy. And then file a petition for a writ of habeas corpus on the ground that parole was denied unconstitutionally because he had a constitutional right based on his liberty interest in individualized consideration. And was denied individualized consideration, was merely denied parole because of non-individualized policy. It seems like that would avoid all of the procedural obstacles here and would squarely put the constitutionality of the policy before the court. How come we're not proceeding that way? It would, and the problem with that, and the Ramirez case, Henry Ramirez that was decided in the California Court of Appeals in December of 2001, that's my case. And I'm still representing Edward Ramirez because he then got a parole date after that. This is from his 1999 hearing. He got a parole date after that. The governor then took it away. I then filed a habeas writ, again, challenging all those same things and challenging the application of the parole system to him and the no parole policy. California Supreme Court refused to even consider the habeas on the merits. And now I'm coming into the Northern District of California to bring a writ on that. So as a practical matter, what happens is this doesn't get resolved. And the difficulty has been that the California Supreme Court is looking at this no parole policy in terms such as Rosencrantz, where they find two grants of parole out of 4,800 hearings, that that negates the existence of a no parole policy. And I think that probably it's been, there's been a lot of difficulty in framing the issues, and I think it's properly framed here, and it's presented in a way that I think that the federal courts can look at this and make a determination as to whether the state actors are violating the federal constitution or not. This is going to give a broad based type of protection to inmates of this nature. And that's what the importance of this type of litigation is, is the broad nature of the protection. Whereas instead of doing individual habeas writs as to this inmate and that inmate, what you can do here is you can obtain a determination that is broad based and applies to the board, to the governor, and in their actions as to all inmates. Unless the court has any other questions, I'll submit the matter. Thank you, counsel. May it please the court, Deputy Attorney General Michael Williams for appellees. Your honors, this action is an unexhausted prisoner's civil action. The relief sought violates the doctrine of Heckley-Humphrey, and it seeks prospective relief to enjoin the actions of the now recalled governor and his appointees. By any measure, it's defective on all grounds. With regard to the exhaustion issue, the district court below found that the plaintiff simply had not used the processes available to them.  Does the grievance procedure apply to the governor? The statute talks about a person may appeal any decision of the board which affects the person. I don't understand that it should apply to the governor as well as to the people operating the parole system. It does not directly, Your Honor. But the agencies that are charged with acting in this case are the Board of Prison Terms for rejecting parole and the Department of Corrections for continuing the inmate sentences. Whether or not the ability applies to them, my question is, does it apply to the governor as well? Well, it does, Your Honor, in that the claim is that the governor's political views have caused those agencies to act in a certain way. But it's still the agencies who have actually acted. Their decisions are challengeable through those processes, and the governor's direct representatives review those at the highest level of review. So there is a review for the agency action that will reach the governor's direct appointees and have a policy-level decision rendered. No, but if the governor reverses his subordinates, can that be grieved? If the governor personally uses his authority to reverse, which is a separate provision than what's at issue here, that is not independently grievable. However, if the governor requests that the Board of Prison Terms have a new rescission hearing, as was the case, for example, with inmate McQuilley, the lead plaintiff in this case, under those circumstances, it is still the board that must act and render its decision, and that would indeed be grievable. But a more important issue than that — So whose decision are you grieving, though, the board or the governor in that situation? Your Honor, in that case, the board is the one who renders the rescission decision, so you are appealing their decision. The fact that the governor requested that rescission is no more than asking the board for a rehearing. It's still a board action, and that is grievable. But that also gets past the initial question of whether this court has jurisdiction at all to review exhaustion in the Ninth Circuit. Pursuant to this court's wide opinion from earlier this year, Prison Litigation Reform Act exhaustion is a non-jurisdictional matter in abatement, and 28 United States Code 2105 explicitly states those matters are not subject to appellate reversal. It's simply a matter of making the plaintiffs file a procedurally proper complaint and let the district courts manage that until the substantive issues are perfected and this court can rule upon them. The plaintiffs didn't do that in this case, and that is not subject to reversal under 2105. I'm having a little trouble with the PLRA idea because what is really the subject of the litigation is not the individual parole decisions that have been made in these cases. It's a policy of not setting parole release dates in accord with the California statute that says that the board shall normally set a parole release date. It's entirely possible that the parole boards could comply fully with the statute and every single plaintiff would get nothing out of it. It doesn't seem like they're seeking release. They're seeking observance of the statute. So what is there to exhaust? Your Honor, the exhaustion process works from the point in time when any individual thinks that they've been wronged. In this case, appellants say that it's the past incidents, though they do not directly challenge them, that give rise to their belief that this policy exists. Any one of them could grieve that at any time. Because it's an ongoing violation in their view, they could bring a group appeal at any time and have those issues addressed. They simply haven't done that. Can they bring an administrative mandamus? Excuse me, Your Honor? Can they bring a mandamus in the superior court? Rid of mandamus in the superior court, Your Honor? I'm not sure I understand your question. Well, if they claim that the board of paroles or board of whatever you call it now is not following the law, can't they bring mandamus in the superior court to require the board to follow the law in his individual case? They could indeed, Your Honor. They could also simply file their grievance and then proceed through a writ of habeas corpus. As the Court's already suggested, these avenues are completely open to them. They just chose not to do that in this case and accordingly violated the PLRA. Well, they kind of want to get a class action and get a nice advisory opinion that will solve all of their problems. They could do so, Your Honor. Or when this Court or another Court reviews these issues, the case law precedent is out there and the agencies will abide by it. Once again, inmate McQuillian's personal circumstance is a fine example. This Court set a rule of law that the State of California's process triggers due process protections. That's now the rule of law. The agencies must abide by it. The system works exactly as it should in that habeas context where the case was properly brought. Did McQuillian's earlier case this year, or it was decided by another panel earlier this year, did that have any effect on this case? It does in terms of it largely moves inmate McQuillian's personal claims for relief. The prospect of injunctive relief wouldn't apply now that he's out. He's no longer a viable plaintiff. He's no longer a viable plaintiff insofar as prospective relief is concerned, insofar as damages are concerned. He might bring a future civil action that would now be outside of the Heck v. Humphrey Bar because he has had his sentence reversed by this Court. That would still be improper in this case, however, because at the time he filed, he had not yet done that. And under the Supreme Court's precedent, Edwards v. Balasag, the case at the outset is either proper or it is not. It should not be stayed or otherwise give the plaintiffs an opportunity to correct their deficiencies as litigation progresses. It should simply be dismissed. As I understand it, the district court here held that there was no HECFAR as to the prospective relief for the people other than McQuillian. Is that right? That is correct, Your Honor. And in that case, the district court erred in an otherwise well-missed opinion. Are you asking us to come out the other way on that point? I am, Your Honor. I'm asking for affirmance on any grounds supported by the record, and I believe this qualifies. And for that, I'd refer to this Court's Butterfield opinion specifically. What we have here is a complaint that tries to put form over substance, and that's exactly what this Court's Butterfield opinion says not to do. If I could quote briefly from it. Appellant would not challenge the alleged procedural defects in his parole hearing if he did not believe that were those procedural defects remedied, he would be paroled. That's exactly what we have here. That inmate was not seeking release, just as these inmates claim that they're not. But the very nature of their claim was such that they were challenging the validity of their continuing sentence. And that's what Butterfield bars by applying the Heckley-Humphrey bar. Ramirez also expanded that notion slightly. Hopefully, Your Honors have had a chance to review that pursuant to our 28J letter. And there, this Court held that what you look to is there a likelihood of accelerating parole. And certainly if the claim is that there's a no parole policy, there could be little that is more likely to accelerate parole than, well, ending such a policy and permitting that opportunity. So between Butterfield, Ramirez, and Heckley, the relief was barred and the district court did err on that point. Absent any further questions from the Court, appellees would submit the matter. Thank you, counsel. Thank you, Your Honor. Counsel, I think you reserved a few seconds if you want to take a moment for rebuttal. I'll respond. In terms of the exhaustion, Your Honor is correct. The administrative remedies do not in any way apply to the governor. And so if the governor has a no parole policy that he mandates down to the Board of Prison Terms in his executive branch, that can't be grieved in any way, shape, or form. As to the question of administrative mandamus, administrative mandamus under the state procedures would not apply to forward looking relief that we're talking about here. So that would not be an available state remedy here. There's something that I have been confused about as I've studied this case. Let's say the governor has a no parole policy. And let's say California law requires that a release date normally be set, which amounts to grant parole unless there's a reason not to in the individual case policy. Why wouldn't a grievance work because a member of the parole board has to follow the governor's feelings and sentiments are? And if the governor is dissatisfied with the parole board members following the law, he can use whatever ability he has to replace him. I guess there's a couple of answers to that. First, the answer is that every time we submit a 1040 appeal to the board as a practical matter, the board responds that they do not have a no parole policy. So they just state we don't have such a policy. Therefore, they don't make a determination on the issue. Secondly, again, it's the forward looking nature of it. The 1040 appeal process is not designed to do anything other than review a prior parole decision that has already been rendered. And so they don't really have the power under the statute to order themselves to comply in the future with the mandate of the statute. Thank you. Just the last thing I would note. Counsel stated that the system worked under McWillian. Take a good close look at McWillian. McWillian was in custody for nine years beyond the proper parole date for him. He was in custody for a year after this Court ordered that the habeas writ be granted. The Attorney General's office fought that tooth and nail to try to keep McWillian in custody for a period of time until finally the district court simply granted the habeas writ but had to stay that because the AG was appealing it to this Court again. This Court again had to issue a determination to order Mr. McWillian released from custody. So Mr. McWillian has not received the benefit of good properly acting state procedures. And I can also tell you that when the Governor took away the date of Edward Ramirez, one of the things that he said in his decision was he said, I have read the case of In re Ramirez and I disagree. And he finds the crime to be particularly egregious even though the court of appeals had directly said the crime was not particularly egregious. So the question of do these State actors follow the law? Does this system work as it's set? No. Thank you. McWillian matters now moot. Is that correct? I don't believe that it's moot. And certainly even if it is moot as to him, it certainly is viable as to each of the remaining plaintiffs. Thank you, counsel. Thank you. McWillian v. Davis is submitted. Thank you.
judges: Cudahy, Kleinfeld,jones